UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

EUGENE KENNETH JONES,           )
                                )
        Plaintiff,              )
                                )
vs.                             )           Case No. 1:12 CV 70 LMB
                                )
PAULA HUFFMAN-PHILLIPS, et al., )
                                )
        Defendants.             )

<u>MEMORANDUM AND ORDER</u>

Plaintiff has filed this action under 42 U.S.C. § 1983 against several officials at Southeast Correctional Center ("SECC"), alleging that his constitutional rights were violated when defendants denied him hygiene items and legal supplies.  Plaintiff also alleges a retaliation claim. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties.  <u>See</u> 28 U.S.C. § 636(c).

This matter is before the court on cross-motions for summary judgment filed by Plaintiff Eugene Kenneth Jones (Doc. No. 71); Defendants Paula Huffman-Phillips, Angela Riddell, Regina Beggs, Cheryl Thompson, Jackie Cooper, Johnny Williams, Penny Milburn, Omer Clark, Jeffrey Norman, Ian Wallace, Dwayne Kempker, Mariann Atwell, and Richard Murray ("MDOC Defendants") (Doc. No. 90); and Defendants Ruth Taylor and Rick Jones, DDS ("Medical Defendants") (Doc. No. 93).  Also pending before the court are the following motions filed by plaintiff: Motion for Reconsideration of the Court's November 8, 2012 Memorandum and Order (Doc. No. 59); Motion for Leave to Supplement (Doc. No. 60); Motion for Reconsideration of the Court's November 8, 2012 Memorandum and Order (Doc. No. 61); and Application for

- 1 -

Appointment of Counsel (Doc. No. 62).  All pending motions have been fully briefed.

## Background[1]

At the time of the allegations, plaintiff was incarcerated at SECC.  Plaintiff was transferred to SECC on October 25, 2011, and placed in housing unit 2.  Defendants were all DOC employees or contractors working at SECC at the time of the allegations.

SECC has a law library with the research materials plaintiff requires, including Westlaw research assistance.  Plaintiff has access to the law library once a week in administrative segregation and housing unit 2, three days a week in general population, and he can receive more time if he has an upcoming due date by filling out a qualified legal claim form.

Hygiene items, including a toothbrush and toothpaste, are available for sale at SECC at the canteen.  All offenders in DOC without a GED receive $7.50 as a monthly stipend.  Plaintiff's entire stipend went towards filing fees from the numerous State and federal lawsuits he has filed from his arrival at SECC to the date he filed this action.

When plaintiff first asked classification staff in housing unit 2 whether he qualified for indigent status, Defendant Huffman-Phillips, Unit Manager for unit 2, took the lead on investigating plaintiff's request.  Plaintiff alleges that he also requested hygiene items from caseworker Defendants Beggs, Cooper, and Murray, but his requests were denied.  Defendant Huffman-Phillips contacted the business office for clarification on two policies defining indigent status and for information on plaintiff's financials.  On November 15, 2011, Defendant Huffman-Phillips told plaintiff he did not qualify for legal supplies.

---

[1]The court's summary of the facts is derived from the statements of undisputed material facts and the evidentiary record submitted by the parties.  The court will cite to specific exhibits when necessary.

On November 15, 2011, plaintiff filed an Internal Resolution Request ("IRR") requesting legal and hygiene items claiming he was indigent.  In a Memorandum to Defendant Huffman-Phillips dated November 15, 2011, Defendant Riddell, Classification Assistant, stated that plaintiff had filed an IRR mentioning Defendant Huffman-Phillips, and instructed Defendant Huffman-Phillips to write a short summary of the incident.  Defendant Huffman-Phillips submitted a Response stating that she had spoken with the business office and was advised that "per policy and central office-he is not indigent because he chose to keep spending money on certain legal issues."  (Def's Ex. B, p. 39).  Defendant Huffman-Phillips further stated that she understood indigent in general to include legal and hygiene, and that she called again to clarify that indigent included "legal but not hygiene, but hygiene will only be the allowed basic items, ie, bar...toilet paper, toothbrush, toothpaste.  He will..."[2]  (Id.).

Defendant Riddell met with plaintiff to discuss his IRR.  Defendant Riddell contacted the business office to determine if plaintiff was indigent.  On December 16, 2011, the business office submitted a letter stating that, pursuant to institutional policy "IS8-1.1 Access to Courts," regarding eligibility "for assistance in purchasing legal supplies," plaintiff was not indigent.[3]  (Id. at 41).  Defendant Riddell recommended that plaintiff's IRR be denied.  Defendant Thompson, Functional Unit Manager, reviewed and signed off on Defendant Riddell's recommendation.  Defendant Thompson submitted the IRR response to Defendant Williams.

On December 20, 2011, Defendant Williams, Acting Warden, denied plaintiff's IRR.

---

[2]Portions of Defendant Huffman-Phillips Response are omitted or illegible.

[3]Plaintiff denies that the business office was referring to basic hygiene items when stating that plaintiff was not indigent as the letter refers only to eligibility for legal supplies.  (Doc. No. 103, p. 3).

Defendant Williams stated that it was determined "per policy SOP8-1.1 Access to Courts you are not indigent because you are spending your entire state tip on general revenue-state debt as well as state and federal filing fees.  These fees are not considered non-discretionary." (Id. at 36).  On December 23, 2011, plaintiff filed an offender grievance appealing this decision.

On January 23, 2012, Defendant Clark, Warden, denied plaintiff's grievance, citing SOP 8-1.1.  Defendant Clark stated that plaintiff was not considered indigent because he was spending his entire state tip on discretionary charges.  (Id. at 34).

On January 25, 2012, plaintiff filed an appeal of the grievance response.  On February 24, 2012, Defendant Kempker, Deputy Division Director of the Division of Adult Institutions, denied plaintiff's appeal stating plaintiff did not qualify for legal supplies because of his discretionary charges and because "[s]taff indicates [plaintiff was] being provided basic hygiene in accordance with IS8-6.1, Access to Basic Hygiene Items."[4]  (Id. at 32).

On March 9, 2012, plaintiff requested a new IRR from Caseworker Defendant Cooper, stating that staff had lied.  Plaintiff filed the IRR but it was refused on March 28, 2012, as he had already filed an IRR regarding indigent status.  Plaintiff wrote two letters to Deputy Warden Defendant Milburn, complaining of hygiene items and other classification issues.  Defendant Milburn forwarded the letters to Defendant Huffman-Phillips, directing her to address the issues.  Defendant Huffman-Phillips responded to both letters on March 16, 2012 and April 2, 2012, and forwarded copies of these responses back to Defendant Milburn.  Defendant Huffman-Phillips

---

[4]In an Affidavit, Defendant Kempker states that he relied on an inter-office communication from Defendant Huffman-Phillips saying that plaintiff qualifies for hygiene items but not legal items.  Def's Ex. G.  Defendants contend that Defendant Kempker was referring to Defendant Huffman-Phillips' Response to plaintiff's IRR.  Plaintiff denies that Defendant Kempker was referring to Defendant Huffman-Phillips' Response to his IRR.

stated that she could not respond to plaintiff's allegations regarding hygiene items, as this matter was being addressed by the grievance and IRR process.  In addition, Defendant Huffman-Phillips assigned plaintiff a job in food services for 90 days so he could work his way up to purchasing hygiene items whenever he wanted.  Plaintiff continued to complain about basic hygiene items after being assigned a job.  Defendant Huffman-Phillips was also forwarded a letter directed at George Lombardi in which she responded to plaintiff, referring him to her previous responses.

On April 6, 2012, Sharon Underhill with the business office confirmed that plaintiff qualified for free hygiene items.  Defendant Huffman-Phillips instructed Caseworker Defendant Murray and Caseworker Tanya Holden to make the hygiene items available to plaintiff.  It was not until April 2013, when Susan Price placed a "call out" every week for plaintiff, so that his name was on the wing door informing him to report to classification, that plaintiff began to retrieve his hygiene items.

Defendant Ruth Taylor is a licensed registered nurse employed by Corizon f/k/a Correctional Medical Services, Inc. ("CMS") as the Director of Nursing at SECC.  Defendant Taylor never provided plaintiff with any medical or dental care, but plaintiff talked to her about getting some basic hygiene items on two occasions after classification staff would not provide him with these items.  Defendant Taylor told plaintiff that the medical department could not give out hygiene items.

Defendant Rick Jones is a dentist licensed in the State of Missouri and retained by Jackson Institutional Dental Services ("JIDS") as an independent contractor.  JIDS is a Missouri corporation that provides dental services to inmates in the Missouri Department of Corrections ("MDOC") pursuant to a contract between JIDS, Corizon, and the MDOC.  After plaintiff spoke

with Defendant Taylor, he wrote to Defendant Jones requesting oral hygiene items.  Plaintiff received a memo from Defendant Taylor in response to his request, in which she stated that the dental department does not supply toothpaste to offenders, and that she discovered plaintiff had been spending his state tip on filing fees.  Plaintiff never received any correspondence from Dr. Jones.  Dr. Jones never provided plaintiff any medical or dental care.  Plaintiff received dental care from William B. Dillon, DDS, during the relevant time period.  Dr. Dillon is not named as a defendant in this action.

In this action, plaintiff alleges that he is being denied basic hygiene items such as a toothbrush and toothpaste because of all of his money is removed from his account as soon as it is deposited to pay State court filing fees.  Plaintiff claims that defendants will not provide him with such items, and they are forcing him to choose between having hygiene items and pursuing his claims in State court.  Plaintiff alleges he has suffered negative health consequences as a result. Plaintiff further alleges that Defendant Huffman-Phillips has retaliated against him due to his complaints regarding hygiene items.  Plaintiff also claims he is being denied legal supplies, and that he suffered an actual injury to a legal claim.  Plaintiff indicates that he is suing each defendant in his or her individual and official capacity.[5]

### SUMMARY JUDGMENT STANDARD

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[5]In a Memorandum and Order dated November 8, 2012, the court dismissed plaintiff's official capacity claims pursuant to 28 U.S.C. § 1915(e)(2)(B).  (Doc. No. 53).

as a matter of law."  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The substantive law

determines which facts are critical and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  Only disputes over facts that might affect the outcome will properly

preclude summary judgment.  Id.  Summary judgment is not proper if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.  Id.

A moving party always bears the burden of informing the court of the basis of its motion.

Celotex Corp., 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving

party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of

material fact, not the "mere existence of some alleged factual dispute."  Fed.R.Civ.P. 56(e);

Anderson, 477 U.S. at 248.  The nonmoving party may not rest upon mere allegations or denials

of his pleading.  Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the court must view the facts in the light

most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor.

Celotex Corp., 477 U.S. at 331.  The court's function is not to weigh the evidence but to

determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249. "'Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge.'"  Torgerson, 643 F.3d at 1042 (quoting Reeves v.

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

Where parties file cross-motions for summary judgment, each summary judgment motion

must be evaluated independently to determine whether a genuine dispute of material fact exists

and whether the movant is entitled to judgment as a matter of law.  See, e.g., Wermager v.

Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir.1983).  The denial of one does not necessitate the grant of the other.  M. Snower & Co. v. United States, 140 F.2d 367, 369 (7th Cir. 1944).

## DISCUSSION

### I.      Plaintiff's Eighth Amendment Claims

To prove an Eighth Amendment violation, a prisoner must satisfy two requirements, one objective and one subjective.  Revels v. Vincent, 382 F.3d 870, 875 (8th Cir. 2004).  The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994).  The second requirement is subjective and requires that the inmate prove that the prison officials had a "sufficiently culpable state of mind."  Id. Eighth Amendment cases are analyzed in light of the specific claim raised.  In prison conditions claims, which include threats to an inmate's health and safety, the subjective inquiry is whether the prison officials were deliberately indifferent to a serious risk of harm to the inmate.  Farmer, 511 U.S. at 834.

Plaintiff moves for summary judgment with respect to all defendants on his claim that defendants were deliberately indifferent to a substantial risk of serious harm to plaintiff in refusing to provide basic hygiene items.  Plaintiff states that his only source of income is a $7.50 a month stipend, and from October 25, 2011 through December 24, 2012, the entire stipend was withdrawn from his account to pay for filing fees for cases plaintiff filed in State and federal court. None of the defendants dispute that plaintiff's entire monthly stipend was spent on State and federal filing fees from October 25, 2011, until the filing of his Amended Complaint in June 2012.

Plaintiff contends that during this time period, he repeatedly asked each of the defendants in person and/or in writing to provide him with basic hygiene items such as a toothbrush, toothpaste, deodorant, and shower shoes, but each request was denied.  Plaintiff contends that he has never been given or offered basic hygiene items, and he has never refused any hygiene items from October 25, 2011 to January 8, 2013.  Plaintiff argues that he has presented evidence that he suffered injuries as a result of the denial of toothpaste, a toothbrush, deodorant, and shower shoes. Specifically, plaintiff contends that he has suffered great pain to his teeth, deterioration of his teeth and gums, looseness of his teeth, bleeding teeth and gums, potential loss of his two front teeth, "under arm problems and feet problems," and emotional distress.  (Doc. No. 71, p. 6).  In support of his motion, plaintiff has submitted his institutional medical records, various correspondence from defendants, copies of his IRRs and grievances, and the affidavits of inmates Tracy Taylor and Albert Moore.

In their Motion for Summary Judgment, the MDOC Defendants first argue that plaintiff failed to satisfy the objective component of his Eighth Amendment claim as he failed to present evidence to establish injuries as a result of his allegations.  Defendants next claim that plaintiff has failed to allege direct involvement by any defendant.  Defendants further argue that, once it was determined by the business office that plaintiff was entitled to hygiene products pursuant to DOC policy, defendants responded reasonably by providing the hygiene products.

The Medical Defendants argue in their Motion for Summary Judgment that the undisputed facts demonstrate that they were not deliberately indifferent to plaintiff's serious medical or dental needs.  The Medical Defendants contend that plaintiff received care and treatment for any complaint he raised regarding his dental concerns.  The Medical Defendants further argue that it is

undisputed that the Dental department is not responsible for providing hygiene products to Missouri inmates and this was repeatedly communicated to plaintiff.

The Eighth Amendment's requirement that "humane conditions of confinement" be provided by prison officials, see Farmer, 511 U.S. at 832, "include[s] provision for basic hygiene." Whittington v. Ortiz, 307 Fed. Appx. 179, 186 (10th Cir. Jan. 13, 2009) (unpublished op.) (citing Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996)).  "A long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights."  Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996).  Moreover, policies forcing prisoners to choose between pursuing their legal rights and having hygienic products violate the Eighth Amendment.  See Whittington, 307 Fed. Appx. at 189; Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996).

Nonetheless, "a prison official violates the Eighth Amendment only when two requirements are met."  Farmer, 522 U.S. at 834.  First, objectively, plaintiff's deprivation must be "sufficiently serious."  Id.  The defendants' conduct must result in the denial of the "minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Mere discomfort or temporary adverse conditions which pose no risk to health or safety do not implicate the Eighth Amendment.  Whittington, 307 Fed. Appx. at 187 (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

Second, subjectively, the "prison official must have a sufficiently culpable state of mind."  Farmer, 522 U.S. at 834.  Thus, a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."  Id. at 837.

As an initial matter, the court notes that defendants argue in their respective replies that

- 10 -

plaintiff's response and reply motions should be stricken and defendants' statements of

uncontroverted material facts should be deemed admitted due to their failure to comply with

Local Rule 7-4.01.  The undersigned acknowledges that plaintiff's method of responding to the

defendants' motions for summary judgment does not fully comply with Local Rule 7-4.01, and

that this has complicated the court's task, but declines to deem the facts contained in defendants'

statements of uncontroverted material facts admitted.  See Brannon v. Luco Mop Co., 521 F.3d

843, 847 (8th Cir. 2008) (noting that district courts "retain[] considerable discretion" over

enforcement of local rules).  Plaintiff has responded to all of the facts alleged by the defendants,

and has pointed to specific evidence upon which he relies.  The factual disputes are clearly before

the court.  The undersigned will discuss the motions for summary judgment in turn.

**Plaintiff's Motion for Summary Judgment**

Plaintiff is not entitled to summary judgment because he has not established for purposes

of summary judgment that he suffered injuries resulting from the denial of requested hygiene

items.  Plaintiff has submitted his institutional medical records, which reveal complaints of tender

and bleeding gums, and note calcium buildup and bone loss.  (P's Ex. G, CMS 10, CMS 16, CMS

19).  Plaintiff's records also reveal he underwent periodontal scaling.  (See id.).  There is no

evidence, however, that defendants' failure to provide hygiene items caused tenderness or

bleeding of plaintiff's gums or bone loss.  In fact, defendants argue that plaintiff's dental problems

existed prior to the allegations at issue in this case.  Defendants point to plaintiff's deposition

testimony, during which he admits that he had at least some dental problems prior to his transfer

to SECC.  (Def's Ex. A, p. 180).  Thus, genuine issues of material fact remain regarding plaintiff's

injuries which preclude summary judgment for plaintiff.

Moreover, plaintiff has also failed to demonstrate that each of the defendants knew of and disregarded an excessive risk to his health.  Rather, genuine issues of fact remain as to each of the defendant's knowledge of plaintiff's failure to receive hygiene items and the resulting risk of damage to his health.  Thus, plaintiff's Motion for Summary Judgment on his Eighth Amendment claims will be denied.

**MDOC Defendants' Motion for Summary Judgment**

The MDOC Defendants contend that hygiene items, including a toothbrush and toothpaste were available at the prison canteen, and that plaintiff chose to spend his monthly stipend on "excessive court filing fees."  (Doc. No. 91, p. 16).  Defendants contend that it is not clearly established that when an inmate "chooses to file a multitude of lawsuits that DOC has to provide Plaintiff with both the stipend and free hygiene items."  (Doc. No. 91, p. 16-17).  The MDOC Defendants argue that this "confusion in the law" explains their confusion in determining whether plaintiff qualified for free hygiene items, and that there is therefore no genuine issue of fact that defendants did not punish plaintiff in violation of the Eighth Amendment.

The undersigned disagrees that the law relevant to plaintiff's claims is not well-established. "A long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights."  Myers, 101 F.3d at 544 (citing Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989)).  Moreover, policies forcing prisoners to choose between pursuing their legal rights and having hygienic products violate the Eighth Amendment.  See Whittington, 307 Fed. Appx. at 189 (prison policy that inmates must buy hygiene products and that they are not able to afford both hygiene products and constitutionally protected litigation violated Eighth Amendment); Keenan v. Hall, 83 F.3d at 1091 (material issue of fact precluded summary judgment where

- 12 -

inmate alleged that prison officials violated Eight Amendment by failing to provide inmate with basic hygiene products, forcing inmate to chose between legal supplies and hygiene products). The MDOC Defendants' professed ignorance of the law does not excuse any resulting violation of plaintiff's constitutional rights and does not entitle them to summary judgment.

With regard to the objective component of plaintiff's Eighth Amendment claim, the MDOC Defendants first contend that deodorant and shower shoes are not considered basic hygiene items and any irritant from not having these items cannot establish a claim of "cruel and unusual treatment." (Doc. No. 91, p. 17).  The undersigned agrees that plaintiff has failed to establish a violation of his constitutional rights as a result of the MDOC Defendants' failure to provide deodorant or shower shoes.  Plaintiff offers no evidence of any damages resulting from not having these items.  Thus, the court will consider only whether plaintiff has set forth sufficient facts to support his claim that his denial of dental hygiene items, namely a toothbrush and toothpaste, resulted in a violation of his constitutional rights.

The MDOC Defendants contend that, even assuming plaintiff did not receive a toothbrush or toothpaste from October 25, 2011, to April 6, 2012, there is no evidence plaintiff suffered an actual, objectively serious, injury.  Defendants argue that, while plaintiff received frequent dental treatment in the DOC and underwent dental procedures, plaintiff's dental conditions existed prior to the allegations in this case.

Plaintiff has provided his institutional medical records, which reveal he frequently complained about tender and bleeding gums.  (P's Ex. G, CMS 10, CMS 16, CMS 19).  Plaintiff's records note bone loss and calcium deposits, and reveal he underwent periodontal scaling.  (See id.).  The dental records also note that plaintiff had poor oral hygiene.  (Id. at CMS 016, CMS

- 13 -

020, CMS 037).  The denial of basic hygiene items such as a toothbrush and toothpaste for a period of at least six months transcends mere discomfort or temporary adverse conditions.  While there is no evidence directly linking plaintiff's dental problems to the MDOC Defendants' failure to provide hygiene items, plaintiff has presented sufficient evidence to create a genuine issue of fact regarding whether plaintiff suffered injuries as a result of his allegations.

The MDOC Defendants have filed a Supplemental Memorandum in Support of their Motion for Summary Judgment, in which they argue that plaintiff misrepresented to the court and defendants that he did not have a balance in his account during all times he complained.  For example, defendants state that plaintiff paid off his fifth State filing fee in October 2012, which left him with a balance of $1.29 for that month, and a balance of $2.79 in November 2012. Defendants further argue that plaintiff chose to spend his balance on items such as tobacco, hot and spicy corn chips, and candy, rather than hygiene items.  Defendants contend that these facts demonstrate that plaintiff's alleged constitutional violation cannot be objectively serious when plaintiff does not take it seriously.

The court finds the allegations set forth in the MDOC Defendant's Supplemental Memorandum unavailing as they do not concern the time period at issue in plaintiff's Amended Complaint.  It is undisputed that plaintiff had no balance in his account due to the automatic withdrawal of various court filing fees from the time he arrived at SECC in October 25, 2011 through at least the time he filed his Amended Complaint in April 2012.

The MDOC Defendants next claim that plaintiff has failed to allege direct involvement by any defendant.  Defendants further argue that, once it was determined by the business office that plaintiff was entitled to hygiene products pursuant to DOC policy, defendants responded

- 14 -

reasonably by providing the hygiene products.

"The subjective component requires that the official was both aware of factors from which the inference could be drawn that a substantial risk of serious harm exited, and he must also draw the inference." Davis v. Oregon Cnty., Mo., 607 F.3d 543, 548-49 (8th Cir. 2010).  Plaintiff has alleged that twelve[6] MDOC defendants have violated his constitutional rights by failing to provide hygiene items.

Plaintiff testified that he requested hygiene items in person from classification staff Defendants Huffman-Phillips and Riddell, and caseworker Defendant Beggs, and these items were not provided.  (Def's Ex. A, p.117-23).  Defendant Riddell met with plaintiff and subsequently determined plaintiff was not indigent and therefore not eligible for the items.  (Def's Ex. C, p. 4-10).  Plaintiff also alleges that he met with caseworker Defendants Cooper and Murray to discuss his requests for hygiene items and they refused to provide plaintiff with the items.  (Def's Ex. A, p. 153, 157, 175-78).  Plaintiff has submitted the Affidavit of inmate Tracy Taylor, in which Mr. Taylor states that he shared a cell with plaintiff from December 2011 through October 2, 2012, and during this time he observed plaintiff approach caseworkers requesting a care package but his requests were denied.  (Affidavit of Tracy Taylor, Attach. 1 to Doc. No. 72).  Mr. Taylor further states that plaintiff was never given or offered a care package by SECC staff during this time. (Id.).

Plaintiff alleges that he met with Defendants Williams, Thompson, and Clark in person to address his requests for hygiene items.  (Id. at 134-36).  The MDOC Defendants contend that, because these defendants relied on the business office's determination that plaintiff did not qualify

_____

[6]This claim is alleged against all defendants except Defendant Atwell.

- 15 -

for hygiene items, their failure to provide the items is not deliberate indifference.     Plaintiff alleges that he told Defendant Kempker that the other MDOC Defendants were lying about providing him hygiene items, yet Defendant Kempker still refused to provide plaintiff with the items.  The MDOC Defendants argue that the "miscommunication" between Defendant Kempker and Defendant Huffman-Phillips was "unfortunate," but was not purposeful.  (Doc. No. 91, p. 22).

Defendants acknowledge that plaintiff sent letters to Defendant Milburn requesting hygiene items, and that Defendant Milburn forwarded plaintiff's letters to Defendant Huffman-Phillips.  Plaintiff alleges that Defendant Milburn was aware plaintiff was not receiving hygiene items and acted with deliberate indifference in failing to assist plaintiff in procuring the items.

The undisputed facts reveal that plaintiff repeatedly complained to the MDOC Defendants both informally and formally about his lack of hygiene items from his arrival at SECC in October 2011, through the time he filed this action in April 2012.  Plaintiff filed an IRR, a grievance, and a grievance appeal challenging the MDOC Defendants' decision that he did not qualify for free hygiene items.  Plaintiff contends that, even after it was confirmed by the business office that plaintiff qualified for free hygiene items in April 2012, the MDOC Defendants continued to fail to provide these items.

While the MDOC Defendants dispute that they refused to provide the hygiene items after April 2012, they do not dispute that they failed to give plaintiff the items prior to this time.  The MDOC Defendants argue that their failure to provide plaintiff hygiene items was due to confusion regarding prison policies and miscommunication amongst the various MDOC officials.  The court, however, finds that plaintiff has set forth sufficient facts for a reasonable jury to find that the

- 16 -

MDOC Defendants were aware that plaintiff was not being provided with dental hygiene items and were deliberately indifferent to a serious risk of harm due to the denial of these items.

With regard to Defendants Norman and Wallace, the court finds that plaintiff has failed to make a sufficient showing to establish knowledge that plaintiff's constitutional rights were being violated.  Plaintiff alleges that he sent these defendants letters informing them that he was not receiving hygiene items.  Defendant Norman was Warden at SECC until only November 15, 2011, the date plaintiff filed his IRR.  Plaintiff alleges that he sent Defendant Norman a letter informing him of plaintiff's need for hygiene items, yet there is no record of such a letter. Similarly, Defendant Wallace did not become Warden at SECC until February 15, 2012, and there is no record of plaintiff's letter to him.  It is settled that "a warden's general responsibility for supervising the operation of a prison is insufficient to establish personal involvement."  Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987).  Plaintiff has failed to set forth facts demonstrating a genuine issue of material fact with regard to his Eighth Amendment claim against Defendants Norman and Wallace.  Thus, summary judgment will granted in favor of Defendants Norman and Wallace on plaintiff's Eighth Amendment claims.

The MDOC Defendants also argue that they are entitled to qualified immunity on plaintiff's Eighth Amendment claims.  "Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009).  To overcome a defendant's qualified immunity claims, the plaintiff must show that: "'(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established

at the time of the deprivation.'" Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir.

2010) (quoting Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009)).  "The

law is clearly established if it gives the defendant officials 'fair warning' that their conduct violated

an individual's rights when the officials acted." Forrester v. Bass, 397 F.3d 1047, 1054 (8th Cir.

2005).  See also Anderson v. Creighton, 483 U.S. 635, 640 (1987) (A right is "clearly

established" if "a reasonable official would understand that what he is doing violates that right.").

If a state official violates a clearly established constitutional right, he is not entitled to qualified

immunity.  Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).

As previously discussed, it is well established that inmates are entitled to basic hygiene

items and that policies forcing prisoners to choose between pursuing their legal rights and having

hygienic products violate the Eighth Amendment.  See Whittington, 307 Fed. Appx. at 189;

Keenan, 83 F.3d at 1091.  See also Myers, 101 F.3d at 544.  If plaintiff's allegations are true, a

jury could find the MDOC Defendants deprived plaintiff of his constitutional rights under the

Eighth Amendment.  Thus, defendant is not entitled to summary judgment on the basis of

qualified immunity.

Accordingly, the MDOC Defendants' Motion for Summary Judgment on plaintiff's Eighth

Amendment claim will be denied.

**Medical Defendants' Motion for Summary Judgment**

The Medical Defendants contend that plaintiff is unable to present any evidence to support

his claims that the Medical Defendants were deliberately indifferent to his serious medical needs in

violation of the Eighth Amendment.  The Medical Defendants contend that the undisputed

material facts demonstrate that plaintiff received care and treatment for any complaint he raised

regarding his dental concerns.  The Medical Defendants further argue that the Dental department is not responsible for providing hygiene products to Missouri inmates and this was repeatedly communicated to plaintiff.

The Medical Defendants focus in both their statement of undisputed facts and in their argument, on the actual dental care provided plaintiff.  Plaintiff's claim is not, however, that the Medical Defendants were deliberately indifferent to his serious dental needs through their dental treatment but rather through their failure to provide adequate dental hygiene supplies to allow him to effectuate the day-to-day treatment necessary to avoid the dental problems for which he was being treated.

The Medical Defendants respond to plaintiff's true allegations by first arguing that plaintiff has not produced any evidence that he suffered an objectively serious harm as a result of the alleged denial of hygiene items.  The court has already found, however, that plaintiff has presented sufficient evidence to create a genuine issue of fact regarding whether he suffered injuries as a result of his allegations.

With regard to the subjective component of plaintiff's Eighth Amendment claim, the Medical Defendants contend that plaintiff fails to produce any evidence that the Medical Defendants knew plaintiff was entitled to the hygiene items but intentionally disregarded a known risk to his health.  The Medical Defendants argue that the undisputed evidence establishes that the Dental department does not supply basic hygiene items, like toothpaste, to offenders.

The undisputed facts reveal that plaintiff requested hygiene items from Defendant Taylor on two occasions and Defendant Taylor denied plaintiff's requests, explaining that the medical department does not give out hygiene items.  Plaintiff testified that after the second interaction

with Defendant Taylor, he wrote to Defendant Jones requesting the items and Defendant Taylor responded to the letter.  On March 29, 2012, Defendant Taylor authored a memo in response to plaintiff's request for toothpaste.  Defendant Taylor stated that she had received plaintiff's request for toothpaste and had discussed the request with Dr. Jones.  (Pl's Ex. G, CMS 026).  Defendant Taylor stated that the Dental department "does not supply toothpaste to offenders."  (Id.).

Defendant Taylor further stated:

> I have also contacted the canteen to see how your money was being spent.  I was informed that you receive a state tip of $7.50 per month.  In lieu of spending your money on toiletries, it is being spent on filing fees.  Unfortunately I cannot assist you with this matter.  You have made a decision about the manner in which you are spending your money.

(Id.).

The Medical Defendants contend that plaintiff fails to provide any evidence that Defendants Taylor or Jones were responsible for providing hygiene items to inmates or they knew plaintiff was entitled to these items but intentionally disregarded a known risk to his health.  In the memo sent to plaintiff in response to his request for toothpaste, however, Defendant Taylor did not simply state that the medical department does not provide hygiene items.  Defendant Taylor proceeded to inform plaintiff that she had contacted the canteen to determine how his funds were being spent and learned that he was spending his state tip on filing fees.  Defendant Taylor then concluded that she was unable to assist plaintiff, as he had made a decision about the manner in which he was spending his funds.

Defendant Taylor's statements imply that she had the discretion to provide dental hygiene items to plaintiff but chose not to due to the method in which plaintiff was spending his funds.  In addition, because Defendant Taylor stated that she had discussed plaintiff's request with

- 20 -

Defendant Jones, it is implied that Defendant Jones participated in this decision and also had the discretion to provide dental hygiene matters if he chose to do so.  The undersigned finds that Defendant Taylor's memorandum creates a genuine issue of fact from which a reasonably jury could conclude that Defendants Taylor and Jones deprived plaintiff of his constitutional rights by failing to provide dental hygiene items, thereby disregarding a known risk to his health.  Thus, the Medical Defendants Motion for Summary Judgment will be denied.

## II.    Plaintiff's First Amendment Claims[7]

### A.    Retaliation

Plaintiff alleges that Defendant Huffman-Phillips retaliated against him for writing to Defendant Milburn by giving plaintiff an unpaid job assignment.  Plaintiff and the MDOC Defendants have moved for summary judgment on this claim.

To establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege: (1) that he engaged in a protected activity, (2) that the defendants responded with adverse action that would "chill a person of ordinary firmness" from continuing in the activity, and (3) that "the adverse action was motivated at least in part by the exercise of the protected activity."  Beaulieu v. Ludeman, 690 F.3d 1017, 1025 (8th Cir. 2012).

In a Memorandum to plaintiff dated March 16, 2012, Defendant Huffman-Phillips stated that she was in receipt of plaintiff's letter to Defendant Milburn regarding his allegations regarding his access to hygiene items, and that these matters were being addressed by the IRR and Appeal process.  (Def's Ex. B, Jones 168).  Defendant Huffman-Phillips further stated that she had reviewed plaintiff's file and discovered that he had only worked three times since the start of his

---

[7]Plaintiff's First Amendment claims are alleged only against the MDOC Defendants.

incarceration in 2003, and that he had last worked in 2008.  (<u>Id.</u>).  Defendant Huffman-Phillips stated that it was her goal to assist plaintiff in becoming a productive citizen upon release, which included obtaining employment and paying for his basic needs.  (<u>Id.</u>).  Defendant Huffman-Phillips indicated that she was, therefore, requesting that staff ensure that plaintiff have a job at food service.  (<u>Id.</u>).  Defendant Huffman-Phillips stated that, after ninety days, she would assist plaintiff in finding other employment.  (<u>Id.</u>).  Defendant Huffman-Phillips indicated that this position would be unpaid, and that plaintiff would work his way into a paid slot so his needs could be addressed.  (<u>Id.</u>).

The court finds that an issue of fact does not exist regarding whether Defendant Huffman-Phillips assigned plaintiff a job in retaliation for writing a letter to Defendant Milburn regarding access to hygiene items.  Even assuming plaintiff's letter to Defendant Milburn was protected First Amendment activity, the assigning of a job cannot be considered adverse action that would "chill a person of ordinary firmness" from continuing in the activity.  While the initial position plaintiff was assigned was unpaid, Defendant Huffman-Phillips indicated that plaintiff could work his way into a paid position and that she would assist him in doing so.  Plaintiff contends that he did not want to work because any money he earned would be deducted to pay for his court filing fees.  If plaintiff worked at a paid position, however, he could eventually pay off his filing fees and would be free to spend his earnings as he chose.  Moreover, plaintiff does not dispute that it was the role of Defendant Huffman-Phillips as a Functional Unit Manager to ensure plaintiff was working towards rehabilitation.  Thus, the court will grant the MDOC Defendants' Motion for Summary Judgment and deny plaintiff's Motion for Summary Judgment on plaintiff's retaliation claim.

A.      **Access to the Courts**

Plaintiff alleges that he has been denied access to the courts because the MDOC

Defendants have failed to provide him with legal items, including paper, envelopes, stamps, pens,

pencils, and legal copies.  Plaintiff also claims that Defendant Atwell, Missouri Department of

Corrections Director, refused to allow him to receive legal research materials, or more than one

day a week in the prison's law library by enacting a policy regarding access to legal materials.

Plaintiff contends that in order to receive legal research materials, additional time in the prison's

law library, and a notarized copy of his inmate account statement for court purposes, he must

show the prison caseworkers a "documented court deadline" or "qualified legal claim."  (Doc.

No. 12, p. 8).  Plaintiff claims that he was injured due to the MDOC Defendants actions in that he

was prevented from filing a post-conviction relief motion, this action, and another civil action in

the Western District of Missouri.

Both plaintiff and the MDOC Defendants have moved for summary judgment on plaintiff's

claim.

"To state a claim [for denial of meaningful access to the courts], inmates must assert that

they suffered an actual injury to pending or contemplated legal claims."  Myers, 101 F.3d at 544.

> Inmates undeniably enjoy a constitutional right of access to the courts and the legal
> system.  *Lewis v. Casey*, 518 U.S. 343, ---, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606
> (1996); *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494-95, 52 L.Ed.2d 72
> (1977).  To protect that right, prisons must provide inmates with some access to legal
> materials or to legal assistance so that inmates can prepare and pursue complaints, and
> with some ability to mail these complaints and related legal correspondence once
> prepared.  *Casey*, 518 U.S. at ---, 116 S.Ct. at 2180; *Bounds*, 430 U.S. at 824-28, 97
> S.Ct. at 1496-98.  Inmates do not have a right, however, either to law libraries or to
> unlimited stamp allowances for legal mail.  Instead, the duty to make such arrangements is
> bounded by the inmates' right of meaningful access to the courts.  *Casey*, 518 U.S. at ---,
> 116 S.Ct. at 2180; *Bounds*, 430 U.S. at 828, 97 S.Ct. at 1498.

Id.

In this case, despite plaintiff's broad allegations of injury, plaintiff has failed to demonstrate he was prejudiced due to a lack of access to the courts.  Plaintiff claims that he was prevented from filing a post-conviction relief motion, yet he admitted in his deposition that he was able to file his post-conviction relief motion and that the filing was accepted by the court.  (Def's Ex. A, p. 196-97).  Plaintiff also admitted that he was able to file the civil action in the Western District, although it was ultimately dismissed.  (Id. at 198).  Plaintiff contends that he has been prevented from preparing and filing the instant case.  Plaintiff has filed a plethora of motions, responses, and replies in this case, and his Eighth Amendment claim has survived the MDOC Defendants' Motion for Summary Judgment.  In addition, plaintiff testified that he is known as a "jailhouse lawyer" at SECC, and he helps other inmates with their cases.  (Id. at 88).  Any claim that plaintiff has been prejudiced in the instant action lacks merit.

Further, plaintiff admits that he has access to SECC's law library with the research materials he requires, including Westlaw research assistance.  (Id. at 199-200).  Plaintiff instead challenges the amount of time he has been allowed to spend in the library.  Plaintiff has access to the law library once a week in administrative segregation and housing unit 2, three days a week in general population, and he can receive more time if he has an upcoming due date by filling out a qualified legal claim form.  (Id. at 194-95).

The court finds that plaintiff has failed to establish a genuine issue of material fact that he was denied access to the courts.  Thus, the MDOC Defendants' Motion for Summary Judgment will be granted and plaintiff's Motion for Summary Judgment will be denied as to this claim.

## II.    Plaintiff's Pending Motions

As previously noted, plaintiff has filed the following motions that are presently pending before the court: Motion for Reconsideration of the Court's November 8, 2012 Memorandum and Order (Doc. No. 59); Motion for Leave to Supplement (Doc. No. 60); Motion for Reconsideration of the Court's November 8, 2012 Memorandum and Order (Doc. No. 61); and Application for Appointment of Counsel (Doc. No. 62).

## A.    Motion to Reconsider the court's November 8, 2012 Order

Plaintiff has filed two separate motions for reconsideration of the court's November 8, 2012 Memorandum and Order (Doc. No. 53).  (Docs. No. 59, 61).  In his first motion (Doc. No. 59), plaintiff challenges the court's determination regarding plaintiff's official capacity claims.  In his second motion (Doc. No. 61), plaintiff requests that the court reconsider its determination regarding his motion for preliminary injunction.

"Motions for reconsideration are nothing more than Rule 60(b) motions when directed at non-final orders."  Elder-Keep v. Aksamit, 460 F.3d 979, 984 (8th Cir. 2006) (internal quotations and citations omitted).  Rule 60(b) provides that a court may reconsider a prior ruling for one of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justified relief.

Fed.R.Civ.P. 60(b).  Rule 60(b) is an "extraordinary remedy" that is justified only in "exceptional

circumstances," <u>Prudential Ins. Co. of America v. Nat'l Park Med. Ctr., Inc.</u>, 413 F.3d 897, 903

(8th Cir. 2005), and "[e]xceptional circumstances are not present every time a party is subject to

potentially unfavorable consequences as a result of an adverse judgment properly arrived at."

<u>Atkinson v. Prudential Prop. Co.</u>, 43 F.3d 367, 373 (8th Cir. 1994) (internal quotations omitted).

**1.      Official Capacity Claims**

Plaintiff requests that court reconsider its decision with regard to plaintiff's official

capacity claims.  Plaintiff argues that state officials sued for injunctive relief in their official

capacities are "persons" subject to liability under § 1983, citing a footnote in <u>Will v. Michigan

Dep't of State Police</u>, 491 U.S. 58, 71 n. 10 (1989).

The MDOC Defendants have filed a Response to plaintiff's motion to reconsider, in which

they argue that the court properly dismissed all claims against defendants in their official

capacities and plaintiff's motion for reconsideration should be denied.  (Doc. No. 64).

In its November 8, 2012, the court dismissed plaintiff's official capacity claims pursuant to

28 U.S.C. § 1915(e)(2)(B).  The court stated that naming a government official in his or her

official capacity is not a suit against the official but rather is a suit against the official's office, in

this case the State of Missouri, which is protected by the Eleventh Amendment.  <u>Will</u>, 491 U.S. at

71.  The court held that plaintiff's complaint fails to state a claim upon which relief can be granted

against defendants in their official capacities.

Plaintiff's motion does not demonstrate any manifest error of law in the court's dismissal

of his official capacity claims.  Plaintiff correctly notes that state officials acting in their official

capacities are § 1983 "persons" when sued for prospective injunctive relief and the Eleventh

Amendment does not bar such relief.  See Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).  In his Amended Complaint, plaintiff seeks monetary damages and requests that the court "order the Defendants to terminate Policy IS8-1.4," the policy regarding law library access. (Doc. No. 10, p. 6).  The court has granted the MDOC Defendants' Motion for Summary Judgment with regard to plaintiff's access to the courts claim.  Plaintiff does not request injunctive relief concerning his Eighth Amendment denial of hygiene items claim in his Amended Complaint. Thus, plaintiff's argument is unavailing, and his motion to reconsider the court's dismissal of his official capacity claims will be denied.

**2.      Preliminary Injunction**

Plaintiff requests that the court reconsider its decision denying his motion for a preliminary injunction directing defendants to provide him with hygiene items and legal materials. The MDOC Defendants argue that plaintiff's motion should be denied, as plaintiff has failed to show he is entitled to injunctive relief.

To determine whether preliminary injunctive relief is warranted, the court must balance the threat of irreparable harm to the movant, the potential harm to the nonmoving party should an injunction issue, the likelihood of success on the merits, and the public interest.  Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113-14 (8th Cir. 1981) (en banc).

The court denied plaintiff's motion for a preliminary injunction, finding that plaintiff had failed to demonstrate irreparable harm or the likelihood of success on the merits.  The court noted that federal courts should not intrude on the day-to-day running of prisons without sufficient reason, which does not appear to exist here.  (Doc. No. 53, p. 5).

Plaintiff has failed to demonstrate any basis to reconsider the court's prior determination.

- 27 -

The court has granted summary judgment for the MDOC Defendants on plaintiff's access to the courts claim.  With regard to plaintiff's access to hygiene items, as noted in the court's November 8, 2012 Memorandum and Order, the MDOC Defendants have submitted the Affidavit of Susan Price, a Case Manager II at SECC, who attests to the fact that plaintiff refused offered care packages containing the requested hygiene items beginning in June 2012.  (Def's Ex. A to Doc. No. 32).  Thus, plaintiff has failed to demonstrate he is entitled to injunctive relief and his motion for reconsideration will be denied.

**B.      Motion for Leave to Supplement**

In this motion, plaintiff requests leave to add various facts and arguments to his Amended Complaint.

The Court does not accept amendments by interlineation.  If a plaintiff wishes to amend his complaint, he must include with his motion to amend a proposed complaint that includes each and every claim he wishes to bring against every defendant in the action.  The filing of an amended complaint replaces the original complaint, and claims that are not realleged are deemed abandoned.  E.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation, 396 F.3d 922, 928 (8th Cir. 2005).  Further, the court notes that the proposed amendments are duplicative of the allegations in plaintiff's Amended Complaint and would not affect the outcome of the pending motions or the ultimate disposition of plaintiff's case.  Accordingly, plaintiff's motion for leave to supplement will be denied.

**C.      Application for Appointment of Counsel**

Plaintiff has filed a motion for appointment of counsel, in which he claims that he has made diligent efforts to obtain counsel, and he requires the assistance of counsel to assist him with

his meritorious claims.  (Doc. No. 62).

The appointment of counsel in a civil case is governed by 28 U.S.C. § 1915 (d).  It is within the district court's sound discretion whether to appoint counsel for those who cannot pay for an attorney under this provision.  See In re Lane, 801 F.2d 1040, 1044 (8th Cir. 1986).

In determining whether a person who is indigent should be appointed counsel, the court should ascertain "whether the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel."  Nelson v. Redfield Lithograph Printing, 728 F.2d 1003, 1005 (8th Cir. 1984).  In addition, the court should consider the factual complexity, the plaintiff's ability to investigate facts, the existence of conflicting testimony, the plaintiff's ability to present her claim, and the complexity of the legal issues.  See Williams v. Johnson, 788 F.2d 1319, 1322-23 (8th Cir. 1986); Abdullah v. Gunter, 949 F.2d 1032, 1035 (8th Cir. 1991), cert. denied, 112 S. Ct. 1995 (1992).

After consideration of the above factors, the undersigned concludes that it is not necessary that counsel be appointed for plaintiff at this point in the litigation.  Plaintiff has clearly presented his claims against defendants.  Thus, plaintiff's motion for appointment of counsel will be denied without prejudice.  "Without prejudice" means that plaintiff may later ask for appointment of counsel if he feels it is necessary.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions for reconsideration (Docs. No. 59, 61) be and they are **denied**.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Leave to Supplement (Doc. No. 60) be and it is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's Application for Appointment of Counsel (Doc. No. 62) be and it is **denied without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Summary Judgment (Doc. No. 71) be and it is **denied**.

**IT IS FURTHER ORDERED** that the MDOC Defendants' Motion for Summary Judgment (Doc. No. 90) be and it is **granted in part** and **denied in part** as discussed herein.  A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that the Medical Defendants' Motion for Summary Judgment (Doc. No. 93) be and it is **denied**.

Dated this 30th  day of September, 2013.

LEWIS. M. BLANTON
UNITED STATES MAGISTRATE JUDGE